**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

KAREEM AKEEM OLAJUWON, SR.,          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          Civil Action No. 3:21-cv-04–HEH
                                     )
DR. OFOGH, *et al.*,                 )
                                     )
            Defendants.              )

## MEMORANDUM OPINION
### (Granting Motion to Dismiss)

Kareem Akeem Olajuwon, Sr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. The action is proceeding on Olajuwon's Amended Complaint. (ECF No. 22.) Olajuwon contends that Defendants[1] provided him with inadequate medical care with respect to cancer in his mouth in violation of the Eighth and Fourteenth Amendments during his incarceration at the Richmond City Justice Center. As an initial matter, Olajuwon has filed a Motion to Amend to correct the spelling of Dr. Kaveh Ofogh's name. The Motion to Amend (ECF No. 83) will be granted, and the Clerk will be directed to correct the spelling of Defendant Ofogh's name on the docket.

---

[1] The Defendants are: 1) Dr. Kaveh Ofogh, "owner of Mediko" P.C., Inc. ("Mediko"); 2) Stuart Broth, DDS; 3) Dixie Delutis, Health Service Administrator at Mediko; 4) Kyla Brown, RN, Mediko, Director of Nursing; 5) J. Womack, Lt. Mediko Liaison; and, 6) Antionette Irving, Sheriff for the City of Richmond. R. Hunt was dismissed as a party to the action by Memorandum Order entered on November 15, 2022. (ECF No. 68.)

The matter is before the Court on the Motion to Dismiss filed by Defendant Ofogh. (ECF No. 74.)  Olajuwon has responded.  (ECF No. 86.)  Defendant Ofogh has filed a Reply.  (ECF No. 87.)  For the reasons set forth below, the Motion to Dismiss will be granted.

## I.      STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin,* 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.*

2

(citations omitted).  Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable," *id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556).  In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).  Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint.  *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.   SUMMARY OF ALLEGATIONS RELATED TO DEFENDANT OFOGH

In his Amended Complaint (ECF No. 22), Olajuwon alleges as follows:[2]

> Plaintiff, suffer[ed] in pain[] from January 2019 through April 2021[[3]]
> with a hole in the bottom right side of his jaw where the dentist had removed

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system.  The Court corrects the spelling, capitalization, spacing, and punctuation and adds paragraph structure, when appropriate, to the quotations from Olajuwon's submissions.

[3] Any reference to 2021 is clearly incorrect.  Olajuwon filed his initial complaint on January 6, 2021 and all of the complained of conduct had already taken place.  Going forward, the Court corrects any reference to 2021 to 2020.

a tooth and the area consta[ntly] bled.   Around July 2019, Plaintiff
complain[ed] again to the dentist that his mouth never heal[ed] and is still
bleeding.  [In] September 2019, the dentist extract[ed] another tooth and that
hole heal[ed].  The dentist stated to the Plaintiff, that he heal[ed] slower than
others because he (Plaintiff) is a diabet[ic].

Plaintiff continu[ed] to complain[] to medical personnel such as
nurses/doctor, that he's in pain[] and all they would do is refer Plaintiff back
to the dentist whom constan[tly] told the Plaintiff that he ha[d] gingivitis and
that there was nothing else he could do for the Plaintiff.  Plaintiff disagreed
with the dentist['s] diagnosis and requested a second opinion.  This request
was denied numerous times by the dentist and the Plaintiff was deliberately
left to suffer in unnecessary and wanton infliction of pain[.]

The Plaintiff wrote a letter to 12 News (Mr. Brent Solomon) seeking
help informing him that he (Plaintiff) was dying inside this jail [and] that he
was receiving inadequate medical car[e].

April 21, 202[0] Plaintiff had major surgery at the Medical College of
Virginia (MCV) Hospital.  This surgery lasted for eight (8) hours to remove
cancer from the Plaintiff's bloody mouth.

Plaintiff believe[s] that his multiple grievances seeking a second
opinion are sufficient to state a plausible Eighth Amendment claim for cruel
and unusual punishment.  Plaintiff believes his Fourteenth Amendment
[rights] under the due process clause have been violated.

Plaintiff never had gingivitis as the dentist said he had.  Instead, it was
painful cancer called "squamous cell carcinoma."  Plaintiff believe[s] that
the delay in having a second opinion caused the long term bleeding to
develop into cancer. . . .

1) Dr. Ofogh, Defendant, Mediko, P.C., is owner of Mediko, P.C.
Defendant is [the] final policy mak[er] over his employee[s] and is totally
responsible for the medical decisions his employee[s] make.  Defendant
Ofogh is in violation of Plaintiff['s] 8th & 14th Amendment[s] under the
United States Constitution[].

(Am. Compl. at 2–4.)[4]  Olajuwon asks for monetary damages and "an injunction . . . to

surgically put teet[h] back in his mouth."  (*Id.* at 8.)

---

[4] The Court only recounts the allegations that relate to Defendant Ofogh for the purposes of this
opinion.

### III.   ANALYSIS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted).   To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Olajuwon contends that Defendant Ofogh is "owner" of Mediko, the medical provider for the Richmond City Justice Center, and "the final policy mak[er] over his employee[s] and is totally responsible for the medical decisions his employee[s] make. Defendant Ofogh is in violation of Plaintiff['s] 8th & 14th Amendment under the United States Constitution[]." (Am. Compl. at 4.)  In his response,[5] Olajuwon adds that

---

[5] Olajuwon entitled his Response, "Breach of Contract Motion in Opposition to Summary Judgment to Kaveh Ofogh." (ECF No. 86.)  The Court notes that Defendant Ofogh filed a

Defendant Ofogh "is responsible for completely supervising and directing the work under this contract and all subcontractor[s] that he may utilize using his best skills and attention. The rendering of all medical services to prisoners, including the Plaintiff, remains under the control of Kaveh Ofogh, M.D., defendant of Mediko PC, to assure the delivery of both routine and emergency health care services at all times." (ECF No. 86 at 4–5.)[6]

Olajuwon fails to allege any facts that would suggest that Defendant Ofogh acted personally in the deprivation of Olajuwon's constitutional rights. Rather, Olajuwon attempts to impose liability on Defendant Ofogh solely because he purportedly owns Mediko and based entirely on *respondeat superior*. Because Olajuwon alleges that Defendant Ofogh should be held liable under a theory of *respondent superior* simply

---

Motion to Dismiss, not a motion for summary judgment. Olajuwon's Response, despite its incorrect title, is clearly directed to the Motion to Dismiss.

[6] To the extent Olajuwon attempts to file a claim of breach of contract under state law against Defendant Ofogh, he did not raise this claim in his Amended Complaint, and he may not tack on a new claim in a response. *See Snyder v. United States*, 263 F. App'x 778, 779–80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics. Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Moreover, as Defendant Ofogh correctly asserts, *inter alia*, Olajuwon has put forth nothing that would suggest that Defendant Ofogh, as CEO of Mediko, individually contracted with the Richmond City Justice Center, to provide medical care. (*See* ECF 87 at 6–7.)

based on his position, he fails to state a cognizable claim for relief. *Iqbal*, 556 U.S. at 676.[7] Olajuwon's claims against Defendant Ofogh will be dismissed.

## IV.   CONCLUSION

The Motion to Dismiss will be granted.  Olajuwon's claims against Defendant Ofogh will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: March 28, 2023
Richmond, Virginia

---

[7] To the extent that Olajuwon alleges that Defendant Ofogh is somehow liable on a theory of supervisory liability, that claim would also fail.  To allege a claim that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted).  Olajuwon fails to allege facts that support any one of these three factors.  Accordingly, he has failed to state a claim for supervisory liability.