**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

KAREEM AKEEM OLAJUWON, SR.,    )
                                   )
       Plaintiff,           )
                                     )
v.                                 )        Civil Action No. 3:21-cv-4–HEH
                                     )
DR. OFOGH, *et al.*,              )
                                     )
       Defendants.      )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Kareem Akeem Olajuwon, Sr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. The action is proceeding on Olajuwon's Amended Complaint. ("Complaint," ECF No. 22.) Olajuwon contends that Defendants[1] provided him with inadequate medical care with respect to cancer in his mouth in violation of the Eighth and Fourteenth Amendments during his incarceration in the Richmond City Justice Center ("RCJC").

---

[1] The Defendants are: 1) Dr. Kaveh Ofogh, "owner of Mediko" P.C., Inc. ("Mediko"); 2) Stuart Broth, DDS; 3) Dixie Delutis, Health Service Administrator, at Mediko; 4) Kyla Brown, RN, Mediko, Director of Nursing; 5) J. Womack, Lt, Mediko Liaison; and, 6) Antionette Irving, Sheriff of the Richmond City Jail. Any claims against Defendants R. Hunt and Dixie Delutis were dismissed by Memorandum Order entered on November 15, 2022 (ECF No. 68), and Claim One against Defendant Ofogh was dismissed by Memorandum Opinion and Order entered on March 28, 2023. (ECF Nos. 88, 89.) The claims against Defendants Broth and Brown will be discussed in a separate opinion.

Although Olajuwon does not set forth clear claims, the Court construes him to raise the following claims for relief:[2]

Claim One:    Defendant Ofogh denied Olajuwon adequate medical care because as the owner of Mediko, he is the "final policy mak[er] over his employee[s] and is totally responsible for the medical decisions his employee[s] make." (ECF No. 22 at 4.)

Claim Two:    Defendant Broth "was deliberately indifferen[t] when . . . [he] fail[ed] to send the Plaintiff out to a specialist and get a second opinion about the diagnosis of the Plaintiff['s] bloody mouth was gingivitis." (*Id.* at 4–5.)

Claim Three: Defendant Brown "was fully aware that Plaintiff . . . was being treated inadequate and deliberately indifferen[t] by dentist, Defendant Broth, whom repeatedly refused [his] request to send the Plaintiff to an outside specialist for a second opinion." (*Id.* at 5–6.)

Claim Four:   Defendant Womack as "medical liaison [is] suppose[d] to solve or bring about a solution to problems" but told Plaintiff that there was "nothing else medical can do." (*Id.* at 6.)

Claim Five:   "Defendant Irving allowed Plaintiff to stay in his housing unit for fourteen (14) months . . . without receiving adequate[] medical car[e]." (*Id.* at 6–7.)

Olajuwon asks for monetary damages and "an injunction . . . to surgically put teet[h] back in his mouth." (*Id.* at 8.)

The matter is before the Court on the Motion for Summary Judgment filed by Defendants Antoinette Irving and J. Womack ("Jail Defendants"). (ECF No. 41.) Olajuwon has responded. (ECF Nos. 69, 70.) For the reasons set forth below, the Motion for Summary Judgment will be granted.

_____

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions.

## I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Schuylkill and Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting

*Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, the Jail Defendants submit Olajuwon's pertinent medical records (ECF Nos. 42-1 through 42-6), and a Declaration of Defendant Womack (ECF No. 42-7).

At this stage, the Court is tasked with assessing whether Olajuwon "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Although Olajuwon filed several responses to the Motion for Summary Judgment, none are sworn to under penalty of perjury, and therefore, fail to constitute admissible evidence.[3] Olajuwon also submitted an unsworn Amended Complaint.

---

[3] Olajuwon has been warned at least three times during the pendency of this action of the manner in which he must respond to a Motion for Summary Judgment. First, in the Court's July 15, 2022 Memorandum Order serving the action the Court explained:

> Plaintiff is advised that the Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matter stated therein. *See* Fed. R. Civ. P. 56(c)(4).

4

Olajuwon's failure to present any evidence to counter the Jail Defendants' Motion for Summary Judgment permits the Court to rely solely on the Jail Defendants' submissions in deciding the Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials . . . .").

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Olajuwon.

## II.   PERTINENT FACTS[4]

The record reflects that Olajuwon already suffered from dental issues upon his admission to the RCJC, as the nurse during his intake screening on November 25, 2018,

---

(ECF No. 25 at 2.) Olajuwon received the same notice again by Memorandum Order entered on September 8, 2022. (ECF No. 38 at 2.) Subsequently, accompanying the Jail Defendants' Motion for Summary Judgment was a notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that once again reminded Olajuwon of his obligations. (ECF No. 41 at 1–2.)

[4] The Jail Defendants' Motion for Summary Judgment fails to comport with the Local Rules for the Eastern District of Virginia. Local Civil Rule 56 requires that: "Each brief in support for motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the facts as alleged to be undisputed." E.D. Va. Loc. Civ. R.56(B). In its current form, the Jail Defendants' brief in support contains a section entitled "Facts" that is not comprised solely of facts, but also clearly includes Plaintiff's unsworn allegations from his Amended Complaint. The Jail Defendants brief lacks a specifically captioned section that contains only undisputed facts.

Moreover, the Jail Defendants submitted medical records that are unauthenticated. "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (citation omitted). "For documents to be considered, they 'must be authenticated by and attached to an affidavit' that meets the strictures of Rule 56." *Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748, 750 (E.D. Va. 2011) (quoting *Orsi*, 999 F.2d at 92). Nevertheless, because the Motion for Summary Judgment turns on the undisputed evidence that neither Jail Defendant was personally involved in the deprivation of Olajuwon's rights and not the intricacies of the medical evidence, the Court will review the Motion for Summary Judgment.

recorded that he had a broken molar. (ECF No. 42-2 at 4.) Olajuwon first complained about his mouth on October 9, 2019, when a medical provider conducting a follow-up visit for his chronic conditions noted that Olajuwon "report[ed] that he bleeds constantly from his gums." (*Id.* at 17.) The provider noted that Olajuwon was "bleeding from right lower gum at cite of dental extraction." (*Id.*)

Olajuwon saw another medical provider on January 9, 2020, who noted that he had mild swelling on the left side of his face. (*Id.* at 20.) Olajuwon was prescribed an oral rinse to use twice daily, a warm salt gargle three times per day, and amoxicillin. (*Id.* at 19.)

Olajuwon was seen for medical attention again on January 24, 2020. His chief complaint was "[t]ooth pain and gum bleeding." (*Id.* at 21.) The medical provider observed that Olajuwon was experiencing "purulent drainage" from his gums and prescribed a hydrogen peroxide rinse. (*Id.* at 22.) By March 24, 2020, Olajuwon was receiving chronic care follow-up for mouth cancer. (*Id.*) The week prior, Olajuwon had gone for his pre-operative evaluation. (ECF No. 42-3 at 1.) Although Olajuwon asked when he would have surgery, the nurse could not provide him with a specific date. (*Id.*)

Olajuwon returned to RCJC on April 18, 2020, after having surgery on the cancer in his mouth. (*Id.* at 4.) Olajuwon remained under medical supervision for at least two months where he received follow-up care for his surgery as well as care related to his chemotherapy and radiation treatments. (*Id.* at 5, 7–24; ECF No. 42-5 at 1–23; ECF No. 42-6 at 1–14)

Defendant Womack serves as a liaison between the Richmond Sheriff's Office and its contracted medical and dental provider, Mediko. (ECF No. 42-7 ¶¶ 1–2.) Inmates submit sick call requests directly to Mediko staff, and Richmond Sheriff's Office employees are typically not involved when an inmate seeks medical care. (*Id.* ¶ 3.) Occasionally, Defendant Womack is made aware of circumstances where an inmate has concerns for Mediko. (*Id.*) As liaison, Defendant Womack will accompany a member of Mediko staff to go speak with the inmate. (*Id.*) Defendant Womack recalls speaking to Olajuwon in that capacity more than two years ago, but his "memory is not precise" about any specifics. (*Id.* ¶ 4.)

As liaison, Defendant Womack has no involvement in determining the medical or dental treatment an inmate receives. (*Id.* ¶ 5.) Defendant Womack does not intervene in the decision-making process or express opinions over the best course of treatment, and he defers entirely to the professional opinions of Mediko staff. (*Id.*) As liaison, his role is to help facilitate communication between the inmate and Mediko staff. (*Id.*)

Defendant Irving, as Sheriff, had no direct involvement in the day-to-day decisions regarding the provision of medical or dental care Mediko provided to inmates. (*Id.* ¶¶ 6–7.)

### III. ANALYSIS

#### A.   Defendants Had No Personal Involvement In This Matter

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)

(quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).  Furthermore, "[t]he

doctrine of *respondeat superior* has no application" under § 1983.  *Id.* (citing *Vinnedge*,

550 F.2d at 928).  Olajuwon must demonstrate that each defendant had "personal

knowledge of and involvement" in the alleged constitutional deprivation to establish

liability under § 1983.  *Id.*

In Claim Five, Olajuwon contends that Defendant Irving "allowed [him] to stay in

his housing unit for fourteen (14) months . . . without receiving adequate medical car[e]

from medical." (ECF No. 22 at 7–8.)  However, Olajuwon fails to allege any facts that

would suggest, much less demonstrate, that Defendant Irving acted personally in the

deprivation of Olajuwon's constitutional rights.  To the contrary, the record shows that

Defendant Irving had no direct involvement in the day-to-day decisions about the

provision of medical or dental care to inmates by Mediko.  (ECF No. 42-7 ¶¶ 6–7.)

Moreover, Olajuwon fails to demonstrate that Defendant Irving was even aware of

Olajuwon's medical condition.

Rather, Olajuwon attempts to impose liability on Defendant Irving solely because

she is the Sheriff for the City of Richmond based entirely on *respondeat superior*.  In his

Response, Olajuwon again claims that Defendant Irving is responsible because she

"oversee[s] the entire[] operation of the facility and that include what transpire[s] in the

medical department." (ECF No. 69 at 3.)  Because Olajuwon alleges that Defendant

Irving should be held liable under a theory of *respondeat superior* simply based on her

position, he fails to establish a cognizable claim for relief. *Wright*, 766 F.2d at 850.[5]

Accordingly, Claim Five will be dismissed.

### B. Defendants Did Not Violate Plaintiff's Constitutional Rights

In Claim Four, Olajuwon contends that Defendant Womack violated his Eighth and Fourteenth Amendment rights. (ECF No. 22 at 3.) From Olajuwon's submissions, it appears that he was a convicted felon at the time of his complaints so the Eighth Amendment, not the Fourteenth Amendment governs his claims.[6] To survive a motion for summary judgment on an Eighth Amendment claim, Olajuwon must demonstrate that Defendant Womack acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it

---

[5] To the extent that Olajuwon contends that Defendant Irving is somehow liable on a theory of supervisory liability, that claim would also fail. To demonstrate that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). Olajuwon puts forth no evidence to support any one of these three factors and fails to demonstrate that Defendant Irving could be liable on a basis of supervisory liability.

[6] Olajuwon was convicted on May 20, 2019. (*See* ECF No. 42 at 6.) The medical records show that his first complaints to medical staff about his painful, bleeding gums was in October 2019. (*See* ECF No. 42-1 at 31.) Thus, Olajuwon was a convicted felon at the time. Even if Olajuwon's initial complaints began prior to his conviction, the Eighth Amendment standard would still apply. *See Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)); *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021).

"has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Olajuwon argues that Defendant Womack as "medical liaison [is] suppose[d] to solve or bring about a solution to problems" but told Olajuwon that there was "nothing else medical can do." (ECF No. 22 at 6.) As a preliminary matter, Olajuwon fails to demonstrate that Defendant Womack was personally involved in the deprivation of his constitutional rights. *Wright*, 766 F.2d at 850. Even if Defendant Womack heard Olajuwon's complaints to medical personnel,[7] Defendant Womack, as a jail employee, had no involvement in the medical care that Olajuwon received, did not intervene in medical decisions, and deferred entirely to the professional, medical opinions of Mediko staff. (ECF No. 42-7 ¶ 5.) Olajuwon was under the care of Mediko providers, and Defendant Womack was entitled to rely on the medical judgment of those providers with respect to the treatment of Olajuwon. *Iko*, 535 F.3d at 242 (holding that once an inmate is placed in the care of appropriate medical personnel, "a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))).

Olajuwon faces a fairly onerous task in demonstrating deliberate indifference in the present circumstances because reliance upon the expertise of prison medical providers in treating inmates is generally appropriate for supervisory jail officials, such as Defendant Womack, in his role as liaison. To overcome such reliance, Olajuwon must introduce evidence demonstrating that Defendant Womack knew that the care provided by medical personnel was so obviously incompetent that it poses a substantial risk of

---

[7] Olajuwon alleges that "Defendant Womack had actual knowledge of the seriousness of Plaintiff's bleeding." (ECF No. 70 at 3.)

harm to his health.  *See Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990).

Olajuwon has failed to put forth such evidence.  Thus, Olajuwon fails to demonstrate that

Defendant Womack violated his Eighth Amendment rights.  Accordingly, Claim Four

will be DISMISSED.

## IV.   CONCLUSION

The Motion for Summary Judgment (ECF No. 41) will be granted.  Claims Four

and Five will be dismissed.  Defendants Irving and Womack will be dismissed as parties

to the action.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: April 20, 2023
Richmond, Virginia

12